STATE *ex rel.* DISTRICT ATTORNEY *v.* INGRAM *et al.*

(Division B. Oct. 18, 1937.)

[176 So. 392. No. 32792.]

486

W. D. Conn, Jr., Assistant Attorney General, for the State.

A. B. McGraw, of Philadelphia, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Percy M. Lee, district attorney of the eighth circuit court district of Mississippi, filed a proceeding in the chancery court of Neshoba county under section 2007, Code 1930, seeking to have certain premises situated in said county, described in the bill, declared a nuisance and abated. He alleged that a place about six miles north of Philadelphia, Miss., on highway 15, was a common nuisance where the law was being violated, and that, on August 21, 1935, the sheriff of Neshoba county, after procuring a search warrant, searched said place and obtained a quantity of intoxicating liquor; that V. C. Ingram, on being tried therefor, pleaded guilty and was fined $100 and costs which he paid. He further alleged that on March 14, 1936, said sheriff, after obtaining a search warrant, again searched said place and obtained a quantity of intoxicating liquor, for which V. C. Ingram was convicted and sentenced to pay a fine of $100 and costs, and appealed therefrom to the circuit court; that on the 14th day of April said sheriff, after first obtaining a warrant, searched said premises and obtained a quantity of intoxicating liquor, for which a criminal prosecution was instituted in a justice of the peace court, where Ingram pleaded guilty and was sentenced to pay a fine of $100 and costs, which were accordingly paid. It was further alleged in the bill that said place also has a notorious reputation as a place where prostitution is permitted, conducted, and carried on in violation of law, and that on account of the above-stated facts and conditions said place was a common nuisance, detrimental to the life, health, happiness, and morals of the community, and should be abated.

V. C. Ingram answered the bill admitting the existence of the place and its ownership, but denying that the

place is one where intoxicating liquor is kept. He admits that he paid a fine of $100 and costs in the justice of the peace court, but denies that said liquor was kept in the place in controversy which is known as Riverside Camp. He admits that on March 14, 1936, a search was made of Riverside Camp by the sheriff of Neshoba county, but denies that liquor was then found on the premises of Riverside Camp. He admits that he was convicted on the 22d of March, 1936, for the possession of intoxicating liquor, from which he appealed to the circuit court, but denies that said liquor was kept, owned, or controlled by Riverside Camp. Appellee admits that on April 15, 1936, his premises were again searched by the sheriff, but denies that any liquor was found in said Riverside Camp, and charges the truth to be that said liquor was found more than 100 yards from Riverside Camp on wild and wooded land. He denied that he pleaded guilty to the ownership of said liquor, that he paid a fine of $100 and costs, and that said Riverside Camp has a notorious reputation as a place where liquor is sold, or where prostitution is permitted, conducted, and carried on in violation of the law, and that said place is a common nuisance and detrimental to the health, life, happiness, and good morals of the community.

A number of the officers of Neshoba county testified to making searches, under search warrants, as alleged by the district attorney, and stated that, on one occasion, appellee V. C. Ingram ran out of Riverside Camp where beer and wine were kept for sale with three pints of intoxicating liquor, and poured out one bottle, and that he pleaded guilty and paid a fine of $100 and costs for having same in possession. They also testified that on other searches liquor was found outside, but near, Riverside Camp, for which V. C. Ingram was convicted and fined $100 and costs, from which conviction he appealed to the circuit court, and that on another charge it was agreed that the prosecution should be discon-

tinued, but he was to pay the fine and costs in the charge that was appealed.

Quite a number of witnesses testified that the place known as Riverside Camp had a general reputation in the community as being a place where liquor was stored and sold, and prostitution was permitted, conducted, and carried on.

V. C. Ingram denied that he had any knowledge of prostitution being carried on, and stated that all persons who occupied the tourist camp registered as man and wife. He denied that it had the reputation as being a place where liquor was kept and sold, but admitted that he pleaded guilty on one charge and was convicted, on another he agreed to pay the fine of $100 and costs if the third charge was dropped. By Ingram's evidence and that of a man who worked for him, it was claimed that this man occupied the premises when the first search was made, but that when the last searches were made Ingram operated the place, and such facts are not disputed. It appears that Ingram had first leased the place and afterwards purchased it, and had secured a U. S. government license for the sale of beer, wine, and other intoxicating liquors, all of which appears from his own admission.

The chancellor refused to abate the nuisance, but it is only just to the chancellor to state that his judgment was rendered prior to the decision of this court in the case of State ex rel. District Attorney v. White, 173 So. 456, in which this court reversed the judgment and rendered a judgment abating the place, etc. In our view the case at bar is governed by the White Case in all of its essential particulars.

It was admissible to introduce evidence as to the reputation of the place because (1) it was shown that V. C. Ingram was in possession of intoxicating liquor at one time when search was made and pleaded guilty, and (2) liquor was found near the building on subsequent

searches, and he was convicted for having possession thereof and paid the fine as stated above.

In Price v. Gulfport, 97 Miss. 477, 52 So. 486, it was held, in a prosecution for having intoxicating liquor, under Laws 1908, chapter 114, section 1797, that evidence showing that accused was constantly receiving large quantities of liquor from without the State, and many bottles, some empty and some full, were found in his place, was admissible.

In Horton v. State, 152 Miss. 41, 118 So. 373, it was held that, where a State's witness testified to purchasing intoxicating liquor from a defendant, and immediately after such purchase arrested defendant for such sale and found liquor on the side of the road by defendant's car, it was competent for such witness to testify to the finding of such liquor, and that such testimony was not subject to the objection that the State "bolstered" up its said witness in such trial, and this testimony was admissible.

Here the proceeding is to abate a common nuisance, and it is contended that before that can be done it must be shown that liquor was found within the building. In our view, this contention is unsound. There was ample proof to show that the law as to the sale of intoxicating liquors was being violated at this place, and it is immaterial that the liquor was not within the building. It was contiguous or near thereto and could be readily procured, and the place was generally regarded as a place where liquor could be had, and where prostitution was permitted and carried on. Therefore, the evidence was competent as to the reputation of the place, from all the circumstances. Circumstantial evidence is admissible in civil cases where consistent with the theory sought to be established, and inconsistent with any other theory, and where it amounts to a high degree of probability. Jones on Evidence (3 Ed.), section 899.

Considering all the facts and circumstances, we think

the conclusion is inescapable that the place constituted a nuisance.

The testimony of V. C. Ingram shows that he had a federal license to sell whisky and other intoxicating liquor, and this, with other evidence, establishes the fact that he did sell liquor and needed that license for protection from federal prosecution.

The judgment of the court below, therefore, will be reversed, and judgment entered here declaring the place to be a nuisance, and enjoining its further operation.

Reversed and judgment here.